IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THOMAS A. CONNELLY, IN HIS CAPACITY AS EXECUTOR OF THE ESTATE OF MICHAEL P. CONNELLY, SR., ) ) ) ) | Case No. 4:19-cv-01410-SRC |
| Plaintiff, ) ) | |
| v. ) ) | |
| THE UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, ) ) ) ) | |
| Defendant. ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS EVAN K. COHEN**

COMES NOW Plaintiff, by and through counsel, and for his Memorandum of Law in Support of his Motion to Exclude Expert Testimony of Defendant's Expert Witness Evan K. Cohen states as follows:

The pivotal issue in this case is whether the proceeds of a life insurance policy acquired for the sole purpose of funding Crown C Supply Company, Inc.'s ("the Company") obligation to purchase a decedent shareholder's shares are includable in the fair market value of the corporation for estate tax purposes. Mr. Cohen's opinions ignore relevant evidence, disregard existing authority on this exact issue, and do nothing to assist the trier of fact. Therefore, Mr. Cohen should be precluded from testifying and offering opinions.

I.     **Legal Standard**

Rule 702 of the Federal Rules of Evidence provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court explained that Rule 702 imposes an obligation on the trial court to act as gatekeeper to ensure that any and all scientific testimony or evidence is not only relevant, but reliable. 509 U.S. at 589. The Supreme Court subsequently extended *Daubert*'s holding to non-scientific expert testimony in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). To determine the admissibility of expert testimony, a trial court must consider whether:

> (1) the evidence based on scientific, technical, or other specialized knowledge is useful to the finder of fact in deciding the ultimate issue of fact; (2) the proposed witness is qualified to assist the finder of fact; and (3) the proposed evidence is reliable or trustworthy in an evidentiary sense.

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). The burden of establishing qualification, reliability and helpfulness lies with the party offering the expert opinion. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006).

In evaluating the reliability of a method as required by *Daubert*, the Supreme Court suggests that a trial court consider certain factors, including: (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has attained general acceptance in the relevant scientific community. See *Daubert*, 509 U.S. at 593-94. The Court's inquiry under Rule 702 must focus on the methodology, not conclusions, but the Court is not required to admit opinion testimony only connected to existing data by an expert's unsupported assertion. See *Daubert*, 509 U.S. at 595; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In addition to determining the reliability of proposed expert testimony, *Daubert* instructs that under Fed.R.Evid. 702 the Court must determine whether the evidence or testimony assists the trier of fact in understanding the evidence or determining a fact in issue. See *Daubert*, 509 U.S. at 591. This consideration focuses on the relevance of the proffered expert testimony or evidence. The Supreme Court explained that to satisfy this relevance requirement, the expert testimony must be "relevant to the task at hand." *Daubert*, 509 U.S. at 591. Thus, the expert testimony must be both relevant and reliable. *Kumho Tire*, 526 U.S. at 141 (citing *Daubert*, 509 U.S. at 589-90).

> With respect to relevance, *Daubert* is further instructive:
>
> Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. . . . The consideration has been aptly described by Judge Becker as one of "fit." "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.
>
> 509 U.S. at 591-92 (internal citations omitted).

Moreover, Fed.R.Evid. 403 permits the exclusion of even relevant evidence "if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury," Rule 403 carries particular significance in *Daubert* decisions because "[e]xpert evidence can be both powerful and quite misleading." *Daubert*, 509 U.S. at 595 (internal quotations omitted). See *U.S. v. Solorio-Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003).

II.     **Argument for Excluding the Opinions of Evan K. Cohen**

    **A. Mr. Cohen's Report and Opinions Disregard Relevant Facts and He Should Be Precluded from Testifying**

Mr. Cohen has demonstrated a lack of understanding and/or a willful disregard of material facts of the case. The Amended and Restated Stock Purchase Agreement dated August 29, 2001 (the "Agreement"), Article VIII, Section B, provides that in the event of the death of a shareholder,

the Company must use the proceeds from any life insurance to purchase the decedent shareholder's shares. See **Exhibit A, Amended and Restated Stock Purchase Agreement**. The effect of Article VIII, Section B on the valuation of the Company is the critical issue in this case.

As to that section of the Agreement, Mr. Cohen claims ignorance. He testified that he did not know from the Agreement that the Company would satisfy its obligations by purchasing life insurance on the lives of two shareholders. See **Exhibit B, Deposition of Evan K. Cohen,** 17:15-22. Even though the purpose of the insurance policy is clearly laid out in Article VIII, Section B of the 2001 Agreement, which Mr. Cohen reviewed, he professed ignorance and stated that he does not know why the life insurance policy was purchased. See **Exhibit B**, 18:4-7. Cohen admitted he is not familiar with the basic fact that the insurance policy was purchased to fund the purchase of the shares upon a shareholder's death. See **Exhibit** 58:16-59:24. He admitted that, despite the plain language of Article VIII, Section B, he does not know if the 2001 Agreement required Crown C to use death benefits to purchase shares from Michael Connelly's estate. See **Exhibit B** 20:14-22. Mr. Cohen's ignorance of Article VIII, Section B is hard to believe given his ability to discuss Article V of the Agreement at length. See **Exhibit B**, 19:17-20:13; 21:9-17; 37:1-24; See **Exhibit C, Report of Evan K. Cohen**, p. 6.

As is discussed in more detail below, Cohen's opinion can only be understood if one ignores key facts and the law. Mr. Cohen's decision to ignore key facts, including his selective inattention to key provisions of the Agreement, renders his opinion unreliable. Cohen did not take into consideration the central clause in the Agreement that is at issue, and as such his opinions are not "relevant to the task at hand" as required by *Daubert* and do not assist the trier of fact. *Daubert*, 509 U.S. at 591. Put another way, expert testimony must not only be based upon reliable methods,

but must also "fit" the particular facts of the case. *Id*. at 592-93. Here, Cohen ignores the facts of this case, rendering his opinion erroneous and unreliable.

### B. Mr. Cohen's Report and Opinions Are Contrary to Law and He Should be Precluded from Testifying

As is set forth in greater detail in Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support, *Estate of Blount v. Comm'r*, 428 F.3d 1338 (11th Cir. 2005) is the seminal case on the ultimate issue in this case. *Blount* has been the law of the land for fifteen years. Congress has not overturned it through legislation. The IRS has never announced their intention not to follow the case. *Blount* remains the touchstone for determining whether insurance proceeds acquired for the purpose of purchasing a decedent shareholder's shares should be included in the valuation of the company for estate tax purposes.

Despite the fact that *Blount* is the leading source of authority on the pivotal issue in this case, Mr. Cohen chooses to ignore it. Mr. Cohen admits that while he is aware of the existence of *Blount*, he does not know what the case concerns, and he ignored it for purposes of his analysis. He did not even read it or familiarize himself with it. See **Exhibit B**, 15:3-4 ("I may have skimmed it . . ."). He conceded that he did not "pay any particular attention" to *Blount* in preparing his opinion, nor did it play any part in forming his opinion. See **Exhibit B**, 14:22-24; 15:5-9; 45:25-46:4; 67:20-23. Mr. Cohen further admitted that he did not even understand that *Blount* dealt with how insurance proceeds from a buy/sell agreement are to be treated for estate purposes. See **Exhibit B**, 15:10-14.

Mr. Cohen is admittedly not a lawyer or other sort of legal expert. Mr. Cohen attempts to parse his opinion by explaining that he is only opining on the Company's fair market value and not considering legal issues. **Exhibit B**, 67:20-68:18. However, court cases are an important source of guidance as to how particular transactions are evaluated. Case law is part of the body of law,

along with statutes, regulations, and other guidance, that inform how valuations are to be performed. Mr. Cohen is being proffered as an expert witness for the purposes of determining the value of the Company and Michael Connelly's shares. Not being a legal expert does not entitle Mr. Cohen to ignore existing law where it provides highly relevant instructions on how certain transactions are to be treated for valuation purposes.

Moreover, expert opinions that are contrary to law are inadmissible. *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 806 (N.D. Ill. 2005). See also *Bailey v. Allgas, Inc.*, 148 F.Supp.2d 1222, 1245-46 (N.D. Ala. 2000); *Koki Holdings Co., Ltd. v. Kyocera Senco Industrial Tools, Inc.*, No. 18-313-CFC 2020 WL5633361 at *1 (D. Del. Sept. 21, 2020). Simply put, *Blount* states that proceeds of an insurance policy acquired for the purpose of funding a company's obligation to purchase a decedent shareholder's shares are not includable in fair market value of the corporation. *Blount*, 428 F.3d at 1345. Cohen ignores this principle of *Blount*, and his analysis includes the value of the insurance proceeds in the valuation of the Company. Mr. Cohen's willful ignorance of the holding of *Blount* has resulted in his offering of an opinion that is contrary to law, rendering his testimony inadmissible.

### C. Mr. Cohen's Report and Opinions Do Not Assist the Finder of Fact and He Should be Precluded from Testifying

As the Supreme Court stated in *Daubert*, testimony must be relevant to the questions at hand. Regardless of the soundness of the methodology, the expert's opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Based on the limited scope of the parties' dispute in this case to essentially a single legal issue, Cohen's opinions do not assist the trier of fact in any way. As discussed above, Cohen's opinions ignore the most important clause of the Agreement, and they ignore the guidance from federal courts as to how to perform a valuation of a company under circumstances such as those in the instant case.

The parties agree as to essentially all the material facts in this case. The issue that remains is whether the insurance proceeds should be included in the valuation of the Company. At its most basic, the resolution of this question involves two parts: (1) an analysis of the Article VIII, Section B of the Agreement, and (2) the effect of that section in light of the holding in *Blount*. As to both issues, Mr. Cohen offers no opinion. As to Article VIII, Section B, Mr. Cohen essentially ignores it. See **Exhibit B,** Deposition of Evan K. Cohen**,** 17:15-22;18:4-7; 58:16-59:24. As to *Blount*, Mr. Cohen says he has not read it, he is not familiar with its holding, and he does not consider it for his analysis. See **Exhibit B**, 15:3-4. As such, Mr. Cohen's opinions do not assist the trier of fact in this case and should be excluded.

## Conclusion

Whether the proceeds of a life insurance policy acquired for the sole purpose of funding the Company's obligation to purchase a decedent shareholder's shares are includable in the fair market value of the corporation for estate tax purposes is the seminal issue in this case. Mr. Cohen's opinions ignore highly relevant evidence, disregard *Blount*, and do not assist the trier of fact in understanding any evidence or determining any facts. Therefore, Mr. Cohen should be precluded from testifying and offering opinions.

Respectfully submitted,

DANNA MCKITRICK, P.C.

*/s/ Robert L. Devereux*
ROBERT L. DEVEREUX
7701 Forsyth Blvd., Suite 1200
St. Louis, MO 63105
Phone: 314.726.1000
Fax: 314.725.6592
Email: rdevereux@DMFIRM.com
**ATTORNEY FOR PLAINTIFF THOMAS A. CONNELLY, IN HIS CAPACITY AS EXECUTOR OF THE ESTATE OF MICHAEL P. CONNELLY, SR.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused true and accurate copies of the foregoing to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 18th day of December 2020

*/s/ Robert L. Devereux*