IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THOMAS A. CONNELLY, IN HIS CAPACITY AS EXECUTOR OF THE ESTATE OF MICHAEL P. CONNELLY, SR., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, <br><br> Defendant. | Case No. 4:19-cv-01410-SRC |

## UNITED STATES' OPPOSITION TO THE PLAINTIFF'S FACTUAL ASSERTIONS

Pursuant to Local Rule 4.01(E), the United States files this Opposition to the Plaintiff's Factual Assertions. The plaintiff was required to, but failed to file a Statement of Uncontroverted Material Facts. *See* L.R. 4.01(E). Instead, the plaintiff filed two Stipulations of Uncontested Facts (ECF Nos. 47, 48) and made unsupported factual assertions in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (the "Memorandum," ECF No. 46). Because the plaintiff failed to file a Statement of Uncontroverted Material Facts, the United States' opposition to the plaintiff's motion for summary relies on the United States' Statement of Uncontroverted Material Facts filed in support of its motion for summary judgment. (*See* U.S. Stmt. of Unconverted Material Facts ("SUMF"), ECF No. 53.)

Further, for the reasons explained herein, pursuant to Fed. R. Civ. P. 56(c)(2), the United States objects to certain evidence proffered by the plaintiff in support of his motion: (1) a "valuation" performed by Anders Minkler Huber Helm LLP ("Anders Minkler"); and (2) Kevin

1

P. Summers' inadmissible opinion testimony. This evidence cannot be presented in a form that would be admissible at trial. *See id.*

I.  **Background**

Michael P. Connelly, Sr. ("Connelly") and Thomas A. Connelly ("TAC") owned 77.18% and 22.82% of Crown C Supply Company, Inc.'s (the "Company") stock, respectively. (U.S. SUMF ¶¶ 11-12.) On August 29, 2001, Connelly and TAC (the "Connelly Brothers") executed the "Stock Purchase Agreement." (*Id.* at ¶ 13, Ex. C, Amended and Restated Stock Purchase Agreement.) The Stock Purchase Agreement provided that after the first Connelly Brother died, either the surviving Connelly Brother or the Company would purchase the deceased Connelly Brother's Company stock. (*Id.*, Ex. C, Stock Purchase Agreement, Art. V.) The Connelly Brothers decided that, after the first of them died, the Company would redeem that brother's stock. (*Id.* at ¶ 16.) The Connelly Brothers funded the Company with life insurance so it could satisfy its redemption obligations under the Stock Purchase Agreement. (*Id.* at ¶ 17.)

After Connelly died, TAC and Connelly's son, Michael P. Connelly, Jr. ("Michael, Jr."), executed the "Purchase and Sale Agreement" through which: (1) the Connelly Estate received $3 million; (2) Michael, Jr. obtained the right to immediately purchase the Company from TAC—his uncle and now the 100% owner of the Company—for $4,166,666; and (3) in the event TAC sold the Company within 10 years, TAC and Michael Jr., agreed to split evenly any gains from the future sale. (*Id.* at ¶¶ 64-66.) This Sale and Purchase Agreement violated the terms of the Stock Purchase Agreement because the Company was supposed to redeem all of Connelly's Company stock. (*Id.*, Ex. C, Stock Purchase Agreement, Art. V.) Instead, Michael, Jr. retained a 50% profits interest in the Company's equity. (*Id.* at ¶¶ 64-66.)

The Stock Purchase Agreement provided two mechanisms for determining the value of

the Company and its stock. (*Id*. at ¶ 23.) First, the Stock Purchase Agreement required the Connelly Brothers to execute a "Certificate of Agreed Value" every year. (*Id*. at ¶ 24.) They never did. (*Id*. at ¶¶ 25-36.) Additionally, the Stock Purchase Agreement required TAC and Michael, Jr. to appraise the value of the Company and Connelly's Company stock before executing the Sale and Purchase Agreement. (*Id*. at ¶ 37.) They did not. (*Id*. at ¶ 38.)

## II. The Anders Minkler "Valuation" Is Not Admissible.

Despite the Connelly family's disregard for its only obligations under the Stock Purchase Agreement, the plaintiff argues that the agreement was a bona fide business arrangement that provided Connelly's estate full and adequate consideration in exchange for Connelly's stock. (Memorandum 2, 11-12.) The plaintiff attempts to support this claim with a "valuation" that it obtained from Anders Minkler during the IRS audit that preceded this litigation. (*Id*. at 2, 11-12, Ex. 5.) The United States objects to the plaintiff's affirmative use of and reliance on the Anders Minkler "valuation" because it is inadmissible hearsay and a technical opinion that does not satisfy Fed. R. Evid. 702 or *Daubert's* reliability requirements.[1]

The Anders Minkler "valuation" is inadmissible hearsay because it is an out of court statement that the plaintiff offers to prove the truth of the matter asserted: the purported "valuation" of the Company and Connelly's Company stock. Fed. R. Evid. 801, 802.

The Anders Minkler "valuation" is not reliable technical evidence (should the plaintiff attempt to proffer it or its contents through Rule 702) because: (1) it is not a full appraisal; and (2) the plaintiff orchestrated the "valuation" to support its position in this case.

---

[1] The United States referenced the Anders Minkler "valuation" in its Statement of Uncontroverted Material Facts to illustrate and explain the deficiencies and inconsistencies in the plaintiff's anticipated arguments, but did not offer it as admissible evidence. (U.S. Stmt. of Uncontroverted Material Facts ¶ 72 n.14.)

3

The Anders Minkler "valuation" is not reliable because it is not an actual appraisal. Anders Minkler is a public accounting firm and performed its "valuation" under the American Institute of Certified Public Accountants' ("AICPA") professional standards. (Memorandum, Ex. 5 at p.2 (C000614).) According to these standards, Anders Minkler could have provided its "valuation" through an "appraisal" engagement, but instead the parties agreed on a "calculation of value" engagement.[2] An appraisal engagement requires the appraiser to perform significant due diligence, independently consider at least three valuation approaches, and reach a conclusion as to value.[3] In contrast, the scope of a calculation of value engagement, including the chosen "valuation" method, is agreed upon with the client, requires significantly less diligence, and only results in a calculated value.[4] The AICPA notes that the Tax Court generally does not accept a calculation of value "valuation" because the Tax Court "demand[s] a full valuation culminating in a conclusion of value." (*See* Ex. MM, AICPA Valuation Services, VS Section, Statements on Standards for Valuation Services, VS Section 100 Valuation of a Business, Business Ownership Interest, Security, or Intangible Asset Calculation Engagements Frequently Asked Questions (FAQs) No. 5.)

The plaintiff capitalized on the calculation of value's flexible scoping rules by requiring Anders Minkler to follow the Eleventh Circuit's *Estate of Blount* analysis (Br. in Supp. of U.S. Mot. to Exclude Op. Test. From Kevin P. Summers ("U.S. Mot. to Exclude"), Ex. 2, Summers

---

[2] *See* AICPA Statements on Standards for Valuation Services, VS Section 100 ¶¶ .21-.44, https://www.aicpa.org/interestareas/forensicandvaluation/resources/standards/downloadabledocuments/ssvs_full_version.pdf.

[3] *Id.*

[4] *Id.* at ¶¶ .21, .46.

Dep. 35:6-37:3)—i.e., the same position it takes in this case (Memorandum 4-7, 13-15). Moreover, just days before finalizing its "valuation," Anders Minkler issued a draft report that "valued" the Company and Connelly's Company stock at $4,765,000 and $3,678,000, respectively, exclusive of the $3 million of life insurance proceeds that the Company used to redeem Connelly's Company stock ("the "Proceeds"). (Ex. NN, Anders Minkler Draft Calculation of Value Report.) Without any explanation in its working papers—i.e., the documents supporting the Anders Minkler "valuation" (U.S. Mot. to Exclude, Ex. 2, Summers Dep. 25:22-28:13)—Anders Minkler immediately reduced its calculated values to match the plaintiff's tax return position (Memorandum, Ex. 5). In other words, the plaintiff repackaged its tax return position in the form of a "valuation." The valuation is not reliable and therefore not admissible. *See, e.g., Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (technical evidence must satisfy *Daubert's* reliability standards to be admissible).

### III.    Summers' Opinion Testimony Is Not Admissible.

The plaintiff could have retained Anders Minkler (or another valuation expert) to provide admissible valuation opinion testimony under Rule 702. But instead, the plaintiff proffers (and cites in support of his motion for summary judgment) impermissible expert opinion testimony from Kevin P. Summers ("Summers"). The United States objects to the plaintiff's attempt to use Summers' inadmissible expert opinion testimony to support his motion for summary judgment.[5] (U.S. Mot. to Exclude, ECF No. 55.)

The Memorandum cites Summers' expert report and uses that report as expert opinion

---

[5] The United States also objects to the plaintiff's use of Summers' expert report because the report is not a sworn declaration or submitted with a sworn declaration or affidavit. *See* Fed. R. Civ. P. 56(c)(4); *Maytag Corp. v. Electrolux Home Prod., Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006), *aff'd*, 224 F. App'x 972 (Fed. Cir. 2007).

5

testimony to support the plaintiff's position that the Proceeds should be excluded from the fair market value of the Company and Connelly's Company stock. (Memorandum at 6-7, Ex. 7.) Summers' opinion testimony is inadmissible and the United States objects to its use because: (1) Summers is not qualified to issue the impermissible legal opinions expressed in his report because he has never practiced law (U.S. Mot. to Exclude at 4-5); (2) Summers improperly invades the court's province by offering impermissible legal opinions (*Id*. at 5-6); (3) Summers improperly summarizes documents and merely parrots the plaintiff's legal arguments (*Id*. at 6-8); and (4) Summers' opinion testimony is neither relevant nor reliable as it: (i) opines on stipulated matters; (ii) contains no factual analysis—i.e., he merely assumes that the Eleventh Circuit's *Estate of Blount* analysis controls; and (iii) opines on matters that are irrelevant in this *de novo* proceeding—e.g., the factual and legal determinations that the IRS made during the administrative audit that preceded this litigation (*Id*. at 8-11).

## IV.     Conclusion

For the reasons explained herein, pursuant to Fed. R. Civ. P. 56(c)(2), the United States objects to the Memorandum's affirmative use and reliance on: (1) the Anders Minkler "valuation"; and (2) Summers' inadmissible opinion testimony. This evidence cannot be presented in a form that would be admissible at trial. *Id.*

Dated: January 12, 2021                     Respectfully submitted,

                                                        JEFFREY B. JENSEN
                                                        United States Attorney

                                                        RICHARD E. ZUCKERMAN
                                                        Principal Deputy Assistant Attorney General

                                                        */s/ James F. Bresnahan II*
                                                        JAMES F. BRESNAHAN II
                                                        Trial Attorney, Tax Division
                                                        U.S. Department of Justice
                                                        P.O. Box 7238
                                                        Washington, D.C.  20044
                                                        Phone: 202-616-9067
                                                        Fax: 202-514-6770
                                                        Email: James.F.Bresnahan@usdoj.gov

                                                        Attorneys for Defendant United States

## CERTIFICATE OF SERVICE

       I hereby certify that on this 12th day of January, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Robert L. Devereux
Danna McKitrick, P.C.
7701 Forsyth Blvd.
Suite 1200
St. Louis, MO 63105
Phone: (314) 889-7119
Email: rdevereux@DMFIRM.com

Attorney for the Plaintiff

                                                        */s/ James F. Bresnahan II*
                                                        JAMES F. BRESNAHAN II
                                                        Trial Attorney
                                                        United States Department of Justice, Tax Division